### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,                )
                                         )
        Plaintiff/Respondent,            )
                                         )  **Crim. Case No. CR-21-170-RAW**
  v.                                     )
                                         )  **Civ. Case No. CV-25-211-RAW**
JEFFREY LYN PIERCE,                      )
                                         )
        Defendant/Movant.                )

### <u>ORDER</u>

Now before the court is the motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence ("§ 2255 motion") filed by Defendant Jeffrey Lyn Pierce. [CR Doc. 187; CV Doc. 1]. Defendant is represented by counsel. The Government filed a response in opposition to Defendant's § 2255 motion. [CR Doc. 205]. This matter is ripe for ruling.

The Tenth Circuit Court of Appeals, in an order and judgment filed on June 11, 2024, provided the following summary of this case:

> In early 2018, Mr. Pierce, a non-Indian, married Ronnie Fitzpatrick, an enrolled member of the Choctaw Nation of Oklahoma (Choctaw Nation). Following their marriage, the couple lived together on a rural property just outside of Hugo, Oklahoma, that included two houses. It is undisputed that the property lies within the boundaries of the Choctaw Nation's reservation and is considered Indian Country for purposes of the General Crimes Act. *See* 18 U.S.C. § 1152.
>
> In early 2020, Ms. Fitzpatrick befriended Jackie Mills, a Hugo resident. Between February and May of 2020, Ms. Fitzpatrick and Ms. Mills saw each other on a daily basis. According to Ms. Mills, Mr. Pierce and Ms. Fitzpatrick argued frequently and, at some point in early 2020, Ms. Fitzpatrick moved from the couple's bigger house and lived separately from Mr. Pierce in the smaller house located on the same property. Ms. Fitzpatrick also, in February 2020, moved some furniture and other belongings from the couple's bigger house into a storage unit in Hugo that she solely controlled.
>
> On the evening of May 6, 2020, Ms. Fitzpatrick and Ms. Mills ate dinner together at the bigger house on the Pierces' property. Ms. Fitzpatrick made a plate of food for Mr. Pierce and took it from the kitchen into the living room where Mr. Pierce was sitting. Mr. Pierce threw the plate of food back at Ms. Fitzpatrick as she

returned to the kitchen. Mr. Pierce then, according to Ms. Mills, "pulled a knife on" Ms. Fitzpatrick. App. vol. I at 218. Ms. Fitzpatrick responded by grabbing a knife and the couple proceeded to argue with each other with the knives in their hands. Ms. Mills was able to persuade the couple to put the knives down. The couple, however, continued to argue and Mr. Pierce placed Ms. Fitzpatrick in a chokehold. Ms. Mills intervened again and Mr. Pierce told Ms. Mills that she "needed to get [Ms. Fitzpatrick] out of there before he killed her." *Id.* at 218. Ms. Mills and Ms. Fitzpatrick left the bigger house and went to Ms. Mills's house. As the two women were leaving, Mr. Pierce threw "a boot or shoes or something out the door at" Ms. Fitzpatrick. *Id.* at 219.

The two women remained at Ms. Mills's house until approximately 9 p.m., when they returned to the bigger house on the Pierces' property. There, they made some margaritas and got in the hot tub. At approximately 2:30 a.m. on May 7, 2020, Ms. Mills left and returned to her own house. Ms. Mills asked Ms. Fitzpatrick to spend the night at Ms. Mills's house, but Ms. Fitzpatrick declined to do so.

According to Ms. Mills, she received several phone calls from Ms. Fitzpatrick later on the morning of May 7, but she missed those calls. Ms. Mills also, at some point that same morning, received a text message from Ms. Fitzpatrick that stated, "Call me ASAP." *Id.* at 221.

In the early afternoon hours of May 7, a Hugo resident named Leonard Fox received a phone call from Mr. Pierce. Mr. Fox had known Mr. Pierce for over forty years and had previously worked for Mr. Pierce at a nightclub in Hugo. According to Mr. Fox, Mr. Pierce "told [him] to call 911, that Ronnie was bleeding from the neck" and that Mr. Pierce had "stabbed her." *Id.*, vol. II at 386. Mr. Fox called 911 and conveyed the information that Mr. Pierce provided to him.

Kay Ledet, a paramedic employed by the Choctaw County Ambulance Authority in Hugo, answered the 911 call placed by Mr. Fox and then drove by ambulance to the Pierces' residence. Mr. Pierce was standing in the doorway of the bigger house and, according to Ms. Ledet, several other people were present at the scene. Mr. Pierce told Ms. Ledet that Ms. Fitzpatrick had pulled a gun. He then told Ms. Ledet that Ms. Fitzpatrick also pulled a knife on him and had been threatening him. Ms. Ledet asked Mr. Pierce if Ms. Fitzpatrick was still threatening him, and Mr. Pierce said "no, she's almost dead." *Id.*, vol. I at 172. Mr. Pierce pointed Ms. Ledet in the direction of Ms. Fitzpatrick, who was lying on her right side inside the house. Ms. Ledet turned Ms. Fitzpatrick over and was able to detect a shallow pulse. Ms. Ledet then dragged Ms. Fitzpatrick onto the front porch area of the house so that she did not disturb what she believed was a potential crime scene and also to get away from the large area of blood around Ms. Fitzpatrick's body. Ms. Ledet actively treated Ms. Fitzpatrick for sixteen minutes, to no avail.

Dr. Cheryl Niblo, a forensic pathologist employed by the Office of the Chief Medical Examiner in Tulsa, Oklahoma, performed an autopsy on Ms. Fitzpatrick's

2

body. Dr. Niblo determined that Ms. Fitzpatrick sustained approximately sixty-six sharp-force injuries, the majority of which were incised wounds, on her head, neck, chest, shoulder, left upper back, arms, and hands. Dr. Niblo concluded that one of those injuries, a one-inch stab wound on Ms. Fitzpatrick's neck, hit an external jugular vein and was lethal because it caused a significant amount of blood loss. Dr. Niblo concluded that the cause of death was multiple sharp-force injuries and that the manner of death was homicide. Lastly, Dr. Niblo noted that Ms. Fitzpatrick tested positive for methamphetamine and Xanax and opined that the methamphetamine was ingested by Ms. Fitzpatrick near the time of her death.

## II

On April 15, 2021, a criminal complaint was filed against Mr. Pierce in the United States District Court for the Eastern District of Oklahoma charging him with murder in Indian Country, in violation of 18 U.S.C. §§ 1111(a), 1151, and 1152. Shortly thereafter, a federal grand jury indicted Mr. Pierce on the same charge. The indictment alleged that Mr. Pierce "willfully, deliberately, maliciously, and with premeditation and malice aforethought, unlawfully kill[ed]" Ms. Fitzpatrick. Suppl. App. at 1.

The case proceeded to a jury trial in May 2022. The government presented testimony from eight witnesses and rested its case. Defendant moved for a judgment of acquittal, but the district court denied that motion. The defense then presented testimony from fifteen witnesses, including Mr. Pierce himself. The focus of the defense case was on Mr. Pierce's theory of self-defense. At the conclusion of all the evidence, the defense again moved for a judgment of acquittal, but the district court again denied the motion. The jury found Mr. Pierce not guilty of first-degree murder, but guilty of second-degree murder.

*United States v. Pierce*, No. 23-7062, 2024 WL 2930939, at *1-2 (10th Cir. June 11, 2024) (unpublished) (footnote omitted). [CR Doc. 185 at 1-5]. Appointed counsel, Jeffrey Ertel, Mildred Dunn and Carmen Brooks, Federal Defender Program, Inc., Northern District of Georgia, represented Defendant at trial.

Paul Warren Gotcher was later retained by Defendant. [CR Doc. 163]. Mr. Gotcher entered his appearance on February 28, 2023. *Id*. Jeffrey Ertel, Mildred Dunn, and Carmen Brooks filed a motion to withdraw as counsel on March 14, 2023, which was granted. [CR Docs. 164 and 165].

The United States Probation Office prepared a Presentence Investigation Report ("PSR"). Based upon a total offense level of 38 and a criminal history category of II, the guideline imprisonment range was 262 months to 327 months. PSR at ¶ 51. Defendant's sentencing hearing

3

was held on August 18, 2023.  [CR Doc. 174].  Mr. Gotcher was present with Defendant.  *Id*.  The Honorable Bernard M. Jones sentenced Defendant to 327 months of imprisonment.  *Id*.  Judgment was entered on August 22, 2023.  [CR Doc. 176].

Defendant's notice of appeal was filed on August 22, 2023.  [CR Doc. 175].  The Tenth Circuit summarized Defendant's arguments as follows:

> Mr. Pierce raises four issues on appeal. In his first two issues, he challenges evidentiary rulings made by the district court during trial. In his third issue, he argues that the district court erred by failing to sua sponte instruct the jury on the theory of imperfect self-defense and the lesser-included offense of involuntary manslaughter. In his final issue on appeal, Mr. Pierce argues that the district court erred in denying his motion for judgment of acquittal.

*United States v. Pierce*, 2024 WL 2930939, at *3.  Ultimately, the Circuit concluded that "all of these issues" lacked merit and affirmed Defendant's conviction.  *Id*.  The mandate was issued on July 3, 2024.  [CR Doc. 186].

Defendant's § 2255 motion was timely filed by Mr. Gotcher on June 30, 2025, and the case was reassigned to the undersigned.[1]  [CR Docs. 187 and 188].  In the motion, Defendant alleges two grounds of ineffective assistance of counsel.

The Government argues in response that Defendant is not entitled to relief on his § 2255 claims.  [CR Doc. 205 at 12].  The Government contends that Defendant failed to establish ineffective assistance of counsel.  *Id*. at 5-11.  The Government further claims that the court may properly deny Defendant's motion without an evidentiary hearing.  *Id*. at 11-12.

Ground One.

---

[1]     The Government does not contest the instant motion's timeliness.  A federal prisoner typically has one year from the date on which his conviction becomes final to file a motion for habeas corpus relief.  *See* 28 U.S.C. § 2255(f).  Defendant filed an appeal, and his "judgment of conviction was not final for purposes of the one-year limitation period in § 2255 until the time during which [he] could have filed a petition for writ of certiorari had expired." *United States v. Burch*, 202 F.3d 1274, 1278 (10th Cir. 2000).  A petition for writ of certiorari to review a judgment in any case entered by a United States court of appeals must be filed within 90 days after entry of judgment (and *not* from the issuance date of the mandate).  *See* Supreme Court Rules 13.1 and 13.3.  The Circuit's Order and Judgment was entered on June 11, 2024, and 90 days from that point is September 9, 2024.  Therefore, Defendant had through September 9, 2025, to file his § 2255 motion.

Defendant asserts ineffective assistance of counsel in Ground One, complaining that counsel failed to call an expert to address allegations that Defendant was in the beginning stages of dementia. [CR Doc. 187 at 3]. Specifically, he claims as follows:

> The attorney for defendant tried to ask the defendant if he was suffering from the beginning of dementia. The government objected and the court sustained the same. The attorney for defendant needed the testimony of dementia to explain the rambling, disjointed, and sometimes confusing testimony of the defendant. The parties and judge repeatedly talked concerning the inability of the defendant to answer a question properly. The attorney for the Defendant stated that the defense had an expert who said the defendant was competent for trial but is in the beginning stages of dementia. On appeal, the Tenth Circuit held that without an expert testifying on dementia, a lay person can not testify about his condition. The issue of credibility of the defendant being extremely important, the failure to call the defense expert to testify about the dementia is ineffective assistance of counsel.

*Id.*

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel, and claims of ineffective assistance of counsel are governed by the familiar two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland v. Washington* standard, Defendant must demonstrate that (1) the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defense. *Id.*, 466 U.S. at 687. Regarding the first prong, the *Strickland* Court provided the following guidance:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* at 689 (internal citation omitted). With respect to the second prong, the Supreme Court explained a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This court "may address the performance and prejudice components in any order, but need not address

both if [Defendant] fails to make a sufficient showing of one." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citations and internal quotation marks omitted).

The Government contends that Defendant failed to establish ineffective assistance of counsel. [CR Doc. 205 at 5-9]. The Government argues as follows:

> While Defendant has called into question his attorney's decision to not utilize an expert witness, that alone does not equate to deficient performance. Counsel's representation is constitutionally deficient only when he or she commits errors severe enough to deprive a defendant of the right to counsel guaranteed in the Sixth Amendment. *Hanson v. Sherrod*, 797 F.3d 810, 826 (10th Cir. 2015). A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Furthermore, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

> The record indicates Defendant's testimony was rambling, but it was objectively competent. Moreover, it is fair to infer the jury understood Defendant was an older gentleman who had difficulty remembering things. To be sure, at one point during his testimony Defendant stated "I can't remember hardly anything anymore. I'm just getting old." (Gov. Ex. 1 at 13). That statement was not stricken from the record. (*Id.*). Based on common sense, not calling a medical expert to explain that a man in his early seventies cannot remember events clearly, after he stated as much, does not fall outside the wide range of reasonable professional assistance.

> For the sake of argument, even if one were to find Defendant's attorney deficient on this point, Defendant would still have to establish he was prejudiced by not having a medical expert explain his mental condition. *See Strickland,* 466 U.S. at 687. In other words, he must prove the outcome of his trial would have been different. *Id.* at 694. Here, the jury heard about the violent and volatile nature of Defendant and R.F.'s relationship, including the multiple instances where R.F. was the aggressor. (PSR ¶ 14, 15). The jury also considered evidence Defendant, around the time of the murder, was aggressive towards R.F., he pulled a knife on her and stated that he might kill her. Finally, the jury learned Defendant ultimately cut and stabbed the victim sixty-six times. (PSR ¶ 14, 15). Based on the totality of the evidence, the notion that a medical expert would have altered the outcome of the trial is unsubstantiated. Therefore, Defendant has failed to meet his burden, and this issue should be dismissed.

[CR Doc. 205 at 8-9].  The court agrees with the Government.  Defendant fails to meet his burden of proving constitutionally ineffective assistance as to Ground One.  Accordingly, Ground One is denied.

Ground Two.

Defendant also alleges ineffective assistance of counsel in Ground Two, claiming "[t]hat since the defense relied upon self-defense, the defense should have requested instructions on involuntary manslaughter and imperfect self-defense."  [CR Doc. 187 at 3].

In response, the Government contends as follows:

Defendant argued on appeal that the district court erred by failing to *sua sponte* instruct the jury on the theory of imperfect self-defense and the lesser-included offense of involuntary manslaughter. The Tenth Circuit concluded the district court was under no obligation to instruct the jury on imperfect self-defense because Defendant failed to request such an instruction, therefore, no plain error existed. (Gov. Ex. 1 at 18-19). Defendant now contends his counsel was ineffective for failing to request instructions on imperfect self-defense and involuntary manslaughter. Defendant's argument lacks merit because counsel made a strategic decision choosing the trial defense and requesting the corresponding jury instruction. Counsel's strategic trial decisions do not constitute ineffective assistance simply because they were unsuccessful.

A district court is not required to instruct a jury on imperfect self-defense and involuntary manslaughter *sua sponte*. *United States v. Sago*, 74 F.4th 1152, 1161-62 (10th Cir. 2023). The Tenth Circuit recently reiterated "[o]ne persuasive reason for the requirement that [affirmative defense] instructions be requested is that whether to request such an instruction is often a strategic or tactical decision." *United States v. Walker*, 130 F.4th 802, 809 (10th Cir. 2025) (citation omitted).

Imperfect self-defense is a mitigating affirmative defense, not a complete defense. *United States v. Sago*, 74 F.4th 1152, 1159 (10th Cir. 2023). Notably, in a murder trial, a defendant might pursue a self-defense instruction rather than imperfect self-defense because, "where a finding of self-defense would lead to acquittal, a finding of imperfect self-defense would lead to a conviction for involuntary manslaughter." *United States v. Walker*, 130 F.4th 802, 809 (10th Cir. 2025) (citing *United States v. Britt*, 79 F.4th 1280, 1287 (10th Cir. 2023); *United States v. Toledo*, 739 F.3d 562, 568–69 (10th Cir. 2014).

In the case at bar, it was objectively reasonable for counsel to have made the strategic decision to seek a full acquittal based on self-defense. Naturally, after learning the jury did not adopt the self-defense theory, one could guess that

imperfect self-defense may have been a better approach. But that sort of hindsight speculation does not constitute deficient performance by any legal measure. *See Boyd v. Ward*, 179 F.3d 904, 915 (10th Cir. 1999).

[CR Doc. 205 at 9-10]. Once more, the court agrees with the Government. Defendant has not demonstrated that the representation was deficient, and the court need not address whether the ineffective assistance claim would also fail under *Strickland*'s prejudice prong. Ground Two is denied.

A certificate of appealability may issue only if Defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a § 2255 motion on the merits, a defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration, this court finds that the standard has not been satisfied. This court hereby declines to issue a certificate of appealability.

Defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence [CR Doc. 187; CV Doc. 1] is hereby DENIED.[2] Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, this court hereby declines to issue a certificate of appealability.

It is so ordered this 13th day of July, 2026.

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA

---

[2]     The motion, files and records of this case conclusively show that Defendant is entitled to no relief. Thus, no evidentiary hearing was held.